Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4073 | **DATE** | 3/12/2003 |
| **CASE TITLE** | Talmitch Jackson vs. John Ashcroft, Attorney General, Department of Justice, et. al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum Opinion and Order, defendant's motion for summary judgment is GRANTED. All other motions are moot and terminated. This action is closed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| X | Notified counsel by telephone. | MAR 13 2003 date docketed | |
| X | Docketing to mail notices. | | 102 |
| X | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| klb (lc) | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TALMITCH JACKSON, )
)
)
)
Plaintiff, )
) No. 00 C 4073
v. )
) HONORABLE DAVID H. COAR
JOHN ASHCROFT, Attorney General, )
Department of Justice, *et al.*, )
)
Defendant. )

MAR 1 3 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff, Talmitch Jackson ("plaintiff" or "Jackson"), filed suit against John Ashcroft, the Attorney General of the United States, the Drug Enforcement Administration ("DEA") and individual DEA employees alleging that his rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., were violated when the DEA held his applications in abeyance while fully processing lower scoring and/or less qualified males for the DEA special agent position. Before this court is defendants' motion for summary judgment. For the reasons set forth below, defendants' motion for summary judgment is granted.

I.  Factual Background

Jackson initially applied for a position as a Special Agent with the DEA in January 1986. At that time, applications for the DEA Special Agent positions were handled as open admissions. Applicants who met the minimum qualifications were interviewed by a panel which comprised three Special Agents and the Recruitment Coordinator. The coordinator normally was not a

voting member of the panel. Applicants were rated by the interviewers on their appearance, bearing and manner, oral expression, drive, self-confidence, resourcefulness and social adjustment. Each panel member gave the applicant a numerical rating on a five point scale. Scores of 4.5 - 5.0 were considered outstanding; 3.5 - 4.4 excellent; 3.0 -3.4 satisfactory; under 3.0 unsatisfactory. Applicants received a composite score based on the average of the scores of the panel members. Jackson was interviewed on January 22, 1987, and received a rating of 3.3 on a 5 point scale. Based on his score of 3.3, Jackson was recommended for future consideration and his application was sent on to headquarters. At that time, applications were to be processed as jobs became available. No action was taken on Jackson's application and he reapplied to the DEA on several occasions, most recently in June 1991.

Jackson was afforded a second interview on August 6, 1991. The panel consisted of the Recruitment Coordinator, Special Agents Steven Bissegger, Walter Peasant, Larry Johnson and William Zopp. At the interview Jackson mentioned that he believed he had been subject to discrimination when he worked for the Chicago Fire Department. Jackson received a rating of 4.1 from S/A Peasant, a rating of 3.6 from S/A Johnson, and a rating of 4.7 from S/A Zopp. As the Recruitment Coordinator, S/A Bissegger completed a composite descriptive appraisal based on the panel's comments. The panel's composite score was 4.1. This rating was in the category of "excellent," and the panel recommended Jackson for consideration for hire.

Pursuant to a request from the Special Agent Programs Manager at DEA Headquarters, DEA's Chicago Field Division Special Agent in Charge ("SAC") Kenneth Cloud sent a recommendation to DEA Headquarters on August 13, 1992, that seven applicants, including Jackson, be considered for hiring. The panel scores of the seven applicants ranged from 4.10 to

5.0. Jackson's score of 41 was the lowest score of the seven. The racial breakdown of the candidates were two black men (including Jackson), one Hispanic man, and four white men. The other black male received a score of 4.6, the third highest. The Recruitment Unit eliminated from consideration any applicant who had a panel score of below 4.0. Approximately 1500 applicants fell below the 4.0 cutoff. For the remaining applicants, including Jackson, the Recruiting Unit examined the panel score, knowledge, skills and abilities, experience, language abilities, any special skills or qualifications and the recommendation from the Special Agent in Charge of the office that referred the applicant. Background investigations were first initiated for those applicants who were determined to be the most qualified.

From October 1991 to June 1992, William Ruzzamenti was Special Agent Programs Manager in Personnel and was responsible for making selections for new Special Agents. Ruzzamenti did not select Jackson as among the most qualified. Ruzzamenti concluded that Jackson did not have special skills or investigative experience that made him stand out from the other candidates. Although Jackson's file was not immediately forwarded for a background investigation, he remained eligible for hire and recommended by the Chicago Field division. In April 1993, however, DEA management concluded that budgetary constraints required a reduction in the large Special Agent applicant pool. It was decided that those applicants who were ready to be hired and applicants who had passed the background investigation and needed only medical and physical fitness tests would be retained in the pool. The remaining 998 applicants, including Jackson, who had not completed the background investigation phase, were sent letters informing them that their applications were being closed. Jackson was informed by letter of May 20, 1993, that his application had been closed, as all recruiting activity for Special

Agents had been put on hold. Jackson was also notified that no further recruiting activity was contemplated before late 1994. The letter advised Jackson that the decision was due to budgetary reasons, and was "in no way a reflection on you or your qualifications." The letter also suggested to Jackson that he maintain contact with the local recruiter so that he could pursue his application whenever the DEA resumed recruitment activity.

The racial breakdown of the 998 applicants (including Jackson) whose applications were closed is as follows: White (79.3%); Black (10.6%); Hispanic (7.6%); Asian (1.7%); and American Indian (.8%). Many of the white applicants whose applications were closed had higher panel rating scores than Jackson. The racial breakdown of Special Agents hired during the period May 1991 - May 1993 is as follows: White (77.0%); Black (10.5%); Hispanic (10.1%); Asian (2.0%); and American Indian (0.4%).

Jackson contacted an Equal Employment Opportunity counselor on or about June 10, 1993 to complain about his non-selection, and in August 1993, Jackson filed a formal complaint, alleging that his application for employment with the DEA had been rejected because of racial discrimination and reprisal. The DEA issued a Final Agency Decision denying Jackson's complaint of discrimination.

II. Summary Judgment Standard

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." Id. at 325. Once a moving party

has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Silk v. City of Chicago, 194 F.3d 788, 798 (7th Cir.1999). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248; Insolia v. Philip Morris, Inc., 216 F.3d 596, 599 (7th Cir.2000). The summary judgment standard is applied with special scrutiny to employment discrimination cases because the outcome may depend on determinations of credibility and intent. Michas v. Health Cost Controls of Illinois, 209 F.3d 687, 692 (7th Cir.2000).

III. Discussion

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., "provides the exclusive judicial remedy for claims of discrimination in federal employment." Brown v. General Services Administration, 425 U.S. 820, 835 (1976). Jackson has named as defendants the Attorney General of the United States, the Drug Enforcement Administration ("DEA") and individual DEA employees who were involved with his employment application. The only proper defendant in a Title VII suit by a federal employee, however, is the head of the employing agency - in this case, the Attorney General. 42 U.S.C. § 2000e-16(c). Accordingly, Jackson's claims against the individual defendants and the DEA are dismissed.

Jackson alleges that he was denied employment because of his race and because he had filed EEO complaints in the past.[1] Jackson does not have direct evidence of discrimination. He may nevertheless establish a prima facie case of discrimination if he is able to present evidence:

---

[1] In Jackson's response brief, he makes general allegations regarding the hiring process that may be interpreted as an allegation of disparate impact. However, Jackson has not submitted any evidence in furtherance of those allegations.

(1) that he belongs to a protected class; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite his qualifications, he was rejected; and (4) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973); Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253-4 (1981). With respect to his claim of retaliation, Jackson must also present evidence sufficient to show that the DEA would have hired him "but for" his engagement in the protected activity. See Sweeney v. West, 149 F.3d 550, 555 (7th Cir. 1998); McKenzie v. Ill. Dep't of Transp., 92 F.3d 473, 483 (7th Cir. 1996). Once the plaintiff has established a prima facie case of discrimination, the burden of production shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for its action. Hughes v. Brown, 20 F.3d 745, 746 (7th Cir. 1994). Once such a reason is articulated, the burden is on the plaintiff to provide evidence that the claimed reason is really a pretext for discrimination. See Essex v. United Parcel Serv., Inc., 111 F.3d 1304, 1309 (7th Cir. 1997). "Pretext ... means a lie, specifically a phony reason for some action." Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995).

Assuming that Jackson has a *prima facie* case of discrimination based on the fact that he met the basic qualifications for the position, it remains his burden to prove that the DEA's justification for its decision is merely a pretext for discrimination. The DEA's proffered reason for failing to hire Jackson was that Jackson's application, along with 1,000 others, was closed due to budgetary reasons. It is undisputed that Jackson was a good candidate. He did well enough in his interview to garner a rating of 4.1, in the category of "excellent," to be one of seven candidates that the Chicago Field Division recommended to DEA Headquarters to consider

for hiring, and to pass the initial cut made by DEA Headquarters of applicants with a panel score of below 4.0. But Jackson was in competition with many other highly qualified candidates from around the country, and DEA Special Agent Programs Manager William Ruzzamenti first initiated background checks for other candidates whom he judged to be more highly qualified. Jackson still could have been sent for a background investigation and hired, but then due to budgetary reasons, Jackson's application was closed along with almost one thousand other applications. Jackson does not dispute the fact of the tight budget or that other applicants were affected by the April 1993 constriction of the applicant pool. The overwhelming majority of the applications that were closed were of white applicants, and many of the white applicants whose applications were closed had higher panel rating scores than Jackson. There is simply no evidence that the decision to close Jackson's application was motivated by race or his prior EEO activity. Jackson "cannot avoid summary judgment with an unadorned claim that a jury might not believe [DEA's] explanation ...; he must point to evidence suggesting that [DEA] itself did not honestly believe that explanation." Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 411 (7th Cir. 1997).

Jackson presents profile sheets of several individuals who were hired that he believes are less qualified than himself. Jackson has not presented any evidence that the decision-makers in his case made the operative decisions relating to the individuals named in the profile sheets. In fact, such a showing would be impossible. Ruzzamenti made the decision not to send Jackson's file for a background investigation. Ruzzamenti assumed the job of Special Agents Programs Manager in Personnel in October 1991. All of the individuals identified by Jackson, however, were sent for background investigations prior to October 1991. Further, the standards for

selecting Special Agents were not the same at the time that the individuals mentioned in the profile sheets were sent for background as they were at the time Ruzzamenti decided not to send Jackson for background. In 1991, the Recruiting Unit eliminated from consideration any applicant who had a panel score below 4.0. Approximately 1500 applicants were eliminated. Based on their panel scores alone, it is clear all or almost all of the subjects of the profile sheets were sent for background before the cut-off was imposed.

Finally, Jackson has not presented any evidence that the profile sheets set forth all of the qualifications of the subject individuals. A plaintiff seeking to prevent summary judgment on the strength of relative qualifications must have credentials so superior to those of the person selected that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." Millbrook v. IBP, Inc., 280 F.3d 1169, 1180-81 (7th Cir. 2002) (internal citations and quotations omitted). The differences must be "so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue. Id. at 1179 (citation omitted). The Court is not in a position to make such a comparison because Jackson has not presented evidence of the qualifications of individuals that were chosen for background investigation ahead of Jackson. The only basic qualification shown on the profile sheets is the panel score. Ruzzamenti did not testify that Jackson's panel score fell below a cut-off or that the decision was based solely on the panel score. Rather, he testified that the reason he did not send Jackson's application for background was that Jackson's panel score did not place him among the highest of candidates being selected for Basic Agent Training and that Jackson did not have special skills or investigative experience that made him stand out from the

other candidates. Jackson has not presented profile sheets of any agents that were submitted for background investigation after October 1991 that he believes are less qualified than himself. In fact, Jackson has not even submitted profile sheets of individuals submitted for background investigation since the date of his application in June 1991. Thus, the profile sheets do not shed any light on the issue of whether Ruzzamenti is telling the truth about why he decided not to send Jackson's application for background.

Jackson's evidence does not show pretext, and he has no other evidence of discriminatory intent. Jackson's EEO complaints were made against other entities, not the DEA. Jackson presents no evidence that Ruzzamenti was even aware of the EEO complaints. Jackson's application states that he was fired from a job as a security officer at Jewel Foods, and that he left a job at the Chicago Fire Department under "unfavorable circumstances," but his explanation states nothing about EEO complaints. There is no evidence whatsoever that Ruzzamenti or anyone else at the DEA was motivated to discriminate or retaliate against Jackson. Accordingly, Jackson has failed to come forward with facts which would be sufficient for a reasonable jury to make a finding in his favor.

## Conclusion

For the foregoing reasons, defendants' motion for summary judgment is GRANTED.

Enter:

*David H. Coar*
David H. Coar
United States District Judge

Dated: March 12, 2003